**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Anne Tepper, | No. CV-18-00494-TUC-MSD |
|     Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
|     Defendant. | |

   Plaintiff Carol Anne Tepper filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) Before the Court are Tepper's opening brief, the Commissioner's response brief, and Tepper's reply brief. (Docs. 14, 16, 17.) For the following reasons, this matter will be remanded back to the agency for reevaluation of Tepper's application.

**BACKGROUND**

**I. Procedural History**

   Tepper applied for disability benefits on March 1, 2015, claiming a disability onset date of May 9, 2012. **AR 10, 86.**[1] Her application was denied on September 23, 2015, and again on reconsideration on February 8, 2016. **AR 10, 129, 136.** On March 10, 2016, Tepper requested a hearing before an ALJ. **AR 140.** At the hearing, held on July 24, 2017, Tepper testified about how her chronic fatigue and other conditions affect her daily life and ability to work, and a Vocational Expert ("VE") testified about which jobs a hypothetical

---

[1]  "**AR**" refers to the Certified Administrative Record.

person with Tepper's characteristics can perform. **AR 31–61.** On October 27, 2017, the ALJ issued a written decision finding Tepper not disabled and denying benefits. **AR 7–18.** On August 31, 2018, the Appeals Council denied review. **AR 1–3.** Tepper now seeks judicial review of the denial of disability benefits. (Doc. 1.)

## II.    Factual Background

### A.    Tepper's Personal and Medical History

Tepper, who is 52 years old, reported having five different jobs between May 1991 and May 2012. **AR 85, 283.** Relevant here, Tepper worked as a laboratory assistant from May 2010 to May 2012. **AR 283.** In that position, she worked three to eight hours per week, earning a wage of $7.85 per hour. **AR 259, 285.** Tepper also worked as an assistant butterfly curator from September 2011 to May 2012. **AR 283.** In that position, she worked 20 hours per week, earning a wage of $10.00 per hour. **AR 259, 284.** Tepper was also a program coordinator from January 2007 to July 2009. **AR 283.**

Tepper reported developing a "severe fatigue problem" in 1998, a problem which eventually caused her to resign from her then-current position as an interpretive park ranger. **AR 244, 642.** She was diagnosed with chronic fatigue syndrome ("CFS") in November 2015. **AR 331.** Tepper also has multiple sclerosis, which was diagnosed in mid-2014. **AR 758, 1564.**

### B.    Treating Physician

On April 22, 2016, Dr. Raed Sukerji, Tepper's primary care physician, completed a "Medical Work Tolerance Recommendations" form. **AR 43, 1603–04.** In the form, Dr. Sukerji indicated that Tepper is incapable of even part-time work in the "sedentary" exertion range. **AR 1603.** Dr. Sukerji further indicated that Tepper can stand for five minutes at one time and for one total hour in a workday, and that Tepper can walk for 45 minutes at one time and for three total hours in a workday. **AR 1603**. He also indicated that Tepper would miss an average of four to eight workdays per month as a result of disability and normal illness. **AR 1603.** At the end of the form, Dr. Sukerji indicated that the "medical note/clinic note [has] further details" about his opinions. **AR 1604.**

In the treatment notes, also dated April 22, 2016, Dr. Sukerji opined that Tepper's "major issue . . . in terms of employment is that for 3-4 days a week on average she wakes up with a sense of excessive fatigue, and at those days she is unable to work." **AR 1774.** He opined further that "even though she can in principal have a part time light job, her frequent unpredictable days where her fatigue takes over and she is unable to be functional and therefore would not be able to show up to work creates a barrier to her employment." **AR 1774–75.**

### C.      Examining Physician

Tepper was examined by Dr. Scott Krasner on September 2, 2015, in connection with her application for disability benefits. **AR 1429.** Dr. Krasner's evaluation report notes that Tepper has a full range of motion in her shoulders, elbows, and wrists, but that she loses balance when trying to walk heel to toe. **AR 1430.** Dr. Krasner found that Tepper's balance problems "will have some mild effects on her functional capabilities, especially as it pertains to prolonged ambulation and climbing as well as working on heights," and thus "recommend[ed]" that Tepper not stand or walk for more than 30 minutes at a time, or for more than four hours in an eight-hour period. **AR 1431.**

There is a "Medical Source Statement" attached to Dr. Krasner's evaluation report. **AR 1432–34.** The statement contains questions that prompt for "yes/no" and "check-the-box" answers. *See* **AR 1432–34.** Notably, Dr. Krasner indicated "yes" to the question whether Tepper has "any limitations in STANDING AND/OR WALKING." **AR 1432.** In response to the follow-up question, "What is the claimant's ability to STAND AND/OR WALK," Dr. Krasner checked the box indicating that Tepper can stand and/or walk "[a]t least 2 hours but less than 6 hours in an 8 hour day (specify # of hours)." **AR 1432.** Dr. Krasner did not "specify [the] # of hours" on the Medical Source Statement as prompted. *See* **AR 1432.** The other two check-box answers included "[l]ess than 2 hours in an 8 hour day (specify how much less, e.g. 1 hr.)" and "6-8 hours in an 8 hour day." **AR 1432.**

### D.      Non-examining Physicians

Two agency physicians, Dr. Luther Woodcock and Dr. John Fahlberg, conducted

paper-only reviews of Tepper's medical file and rendered opinions on Tepper's residual functional capacity ("RFC").  **AR 96–97, 115–17.**  At the initial determination level, Dr. Woodcock opined, among other things, that Tepper can stand and/or walk for a total of four hours in an eight-hour workday.  **AR 96.**  At the reconsideration level, Dr. Fahlberg opined, among other things, that Tepper can stand and/or walk for approximately six hours in an eight-hour workday.  **AR 115.**

### E.    Lay-Witness Statements

Linda Rothchild, Tepper's mother, completed two adult-function reports and wrote a letter about Tepper's conditions.  **AR 300–07, 320–27, 338–39.**  Doug Tepper, Tepper's brother, wrote a letter about Tepper's conditions.  **AR 340–41.**  Linda and Doug offered similar descriptions of Tepper as a formerly active, healthy person who is now severely limited due to her extreme and unpredictable fatigue.  **AR 338–41.**

## III.   Hearing

At the hearing before the ALJ, Tepper testified generally about her past work, her then-present attempts to work, and the symptoms of her chronic fatigue and multiple sclerosis.  *See* **AR 34–38, 40–43, 54–56.**  Regarding her fatigue, Tepper testified that her symptoms are unpredictable, that she sleeps approximately 12 to 13 hours per day, that she takes multiple naps during the day, and that after physical exertion she can stay in bed for up to two days.  **AR 36–37, 42–43, 49–50.**  Regarding her multiple sclerosis, Tepper testified that she has "a lot of balance problems," that she has fallen and hurt herself multiple times, and that she has difficulty using her dominant left hand for fine movements.  **AR 37, 45–46, 50–51.**  Tepper also testified that she tries to walk 20 minutes at a time approximately one to three times per week.  **AR 44.**  The ALJ inquired into a 12-day birdwatching trip that Tepper took in mid-2016, and Tepper explained that she was able to accommodate her fatigue by sleeping in late, going to her room early if she became tired, and sleeping in her rented car if necessary.  **AR 46.**

A VE testified that Tepper's butterfly curator job was a composite job consisting of elements of numerous occupations, and that Tepper performed that composite work at the

light exertion level. **AR 57.** The VE testified that Tepper's laboratory assistant job is generally performed at the light exertion level, but that Tepper performed it at the sedentary level. **AR 57–58.** The VE further testified that the remainder of Tepper's past jobs were actually and generally performed at the light exertion level, except for Tepper's program coordinator job, which she actually performed at the medium exertion level. **AR 58.**

The ALJ asked the VE about a hypothetical claimant with Tepper's age and education who is limited to frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, occasional balancing, and frequent stooping, kneeling, crouching, and crawling, but who could otherwise perform the full range of light work. **AR 58.** The VE testified that this hypothetical claimant could perform all of Tepper's past work except for program coordinator, which was actually performed at the medium exertion level. **AR 58.** When asked how much work the hypothetical claimant could miss and remain competitive in the workforce, the VE stated that the hypothetical claimant could miss two days per month without a medical excuse and three days per month with a medical excuse. **AR 59.** The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations. **AR 59.**

## IV. ALJ Decision

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. **AR 11–18.** At step one, the ALJ found that Tepper was not engaged in "substantial gainful activity." **AR 13.** At step two, the ALJ concluded that Tepper has two "severe" impairments: multiple sclerosis and CFS. **AR 13.** The ALJ also concluded that Tepper's depression and anxiety are "non-severe" impairments. **AR 13.** At step three, the ALJ found that Tepper does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **AR 13–14.**

Between steps three and four, the ALJ found that Tepper has the RFC to perform light work with the following limitations: she can occasionally climb ladders, ropes, and scaffolds, she can occasionally balance, she can frequently climb ramps or stairs, and she

can frequently stoop, kneel, crouch or crawl.  **AR 14.**  In determining Tepper's RFC, the ALJ gave "substantial weight" to the opinions of the non-examining state-agency physicians because they "are highly qualified physicians who are also experts in Social Security disability evaluation and their opinion that the claimant can perform a wide range of light work activity is consistent with the medical evidence . . . ."  **AR 15.**  The ALJ gave "reduced weight" to the opinion of Dr. Sukerji that Tepper is precluded from all work, because the record shows Tepper is capable of "perform[ing] a whole host of activity."  **AR 15.**  The ALJ gave "partial weight" to the opinions of Dr. Krasner, because Dr. Krasner "examined [Tepper] on a one-time basis and had no treating relationship with" her.  **AR 17.**  The ALJ gave "some weight" to the statements of Tepper's family members, because their observations of a decline in Tepper's abilities do not necessarily mean that Tepper is precluded from "performing all work activity."  **AR 17.**

At step four, the ALJ determined that Tepper can perform all of her past relevant work, both as generally performed in the national economy and as she actually performed it, with the exception of program coordinator, which she can perform only as generally performed.  **AR 17.**  As a result, the ALJ concluded that Tepper is not disabled.  **AR 17–18.**

## STANDARD OF REVIEW

A person is "disabled" within the meaning of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "When considering a claim for disability benefits, the Social Security Administration is required to conduct a now-familiar five-step sequential evaluation process to determine whether a claimant is disabled and eligible for benefits."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017).  The claimant bears the burden of proof at steps one through four; the Commissioner bears the burden at step five.  *Barnes v. Berryhill*, 895 F.3d 702, 703 n.3 (9th Cir. 2018) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999)).

At the first step, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If yes, the ALJ will find the claimant not disabled. *Id.* At the second step, the ALJ considers whether the claimant has a "severe" physical or mental impairment, or a combination of impairments that is "severe," that has lasted at least one year. *Id.* §§ 404.1520(a)(4)(ii), 404.1509. If not, the ALJ will find the claimant not disabled. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairments meet or equal one of the medical conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If yes, the ALJ will find the claimant disabled. *Id.*

If the ALJ does not find the claimant disabled at the third step, before proceeding to the fourth step, the ALJ will determine the claimant's RFC—i.e., what the claimant can still do despite her limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); 20 C.F.R. § 404.1545(a)(1). At the fourth step, the ALJ considers whether the claimant has the RFC to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If yes, the ALJ will find the claimant not disabled. *Id.* At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience and determines whether the claimant "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If yes, the ALJ will find the claimant not disabled; if not, the ALJ will find the claimant disabled. *Id.*

The ALJ's decision to deny disability benefits is subject to harmless-error review, *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)) and must be affirmed "unless it is not supported by substantial evidence or is based on a legal error," *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017) (citing *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010)). "Substantial evidence 'is more than a mere scintilla,' but less than a preponderance." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam)). "A reviewing court may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did

not rely.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

## DISCUSSION

### I. Evaluation of Tepper's Past Work

Tepper argues the ALJ erred in determining that she has past relevant work in the sedentary exertion range. She contends that neither her laboratory-assistant job nor butterfly-curator job qualify as past relevant work, because her earnings did not reach the level considered to be substantial gainful activity. The Court agrees.

#### A. Legal Principles

At the fourth step, the ALJ determines whether the claimant retains the RFC to perform her "past relevant work"; if so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). "A job qualifies as past relevant work only if it involved substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); *see* 20 C.F.R. § 404.1560(b)(1). "Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." *Lewis*, 236 F.3d at 515 (citations omitted). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Id.*

The Social Security regulations specify monthly earnings amounts, which are used to determine whether a claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2).[2] Generally, the claimant is considered to have engaged in substantial gainful activity if her earnings exceed the applicable monthly amount; the claimant is considered to *have not* engaged in substantial gainful activity if her earnings equal or fall below the applicable monthly amount. *Id.* § 404.1574(b)(2)–(3). The ALJ will generally not consider information besides earnings unless "there is evidence indicating that [the claimant] may be engaging in substantial gainful activity or that [the claimant] [is] in a position to control when earnings are paid . . . or the amount of wages paid . . . ." *Id.* § 404.1574(b)(3)(ii).

---

[2] The table set forth in the regulations only goes up to the year 2000. *See* 20 C.F.R. § 404.1574(b)(2). The Social Security Administration's website provides the monthly earnings amounts for all subsequent years. *See* https://www.ssa.gov/OACT/COLA/sga.html (last visited September 16, 2019).

- 8 -

### B.    Analysis

Tepper worked as a laboratory assistant from May 2010 to May 2012.  **AR 283.**  She worked three to eight hours per week at a wage of $7.85 per hour.  **AR 285.**  Assuming that Tepper worked eight hours per week and worked every week, then she would have earned approximately $250 per month—far lower than the substantial-gainful-activity level in 2010 ($1,000), 2011 ($1,000), and 2012 ($1,010).  Tepper worked as a butterfly curator from September 2011 to May 2012.  **AR 283.**  She worked 20 hours per week at a wage of $10 per hour.  **AR 284.**  This equates to approximately $800 per month—again, lower than the substantial-gainful-activity level during that time.  Thus, Tepper's earnings indicate she was not engaged in substantial gainful activity.  *See* 20 C.F.R. § 404.1574(b)(3)(i).

The Commissioner concedes that the neither position is by itself past relevant work.  However, the Commissioner argues that the ALJ properly considered "other information in addition to [Tepper's] earnings," specifically that Tepper worked both jobs at the same time.  Because the earnings from those two jobs together exceeded the substantial-gainful-activity level, the Commissioner says, the ALJ correctly found that Tepper was engaged in substantial gainful activity.

The ALJ, however did not provide this reason.  "Long-standing principles of administrative law require [federal courts] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  In determining Tepper's past relevant work, the ALJ merely cited and adopted the VE's testimony.  **AR 17.**  The ALJ did not discuss Tepper's earnings individually or in combination.  *See* **AR 17.**  Furthermore, the ALJ will "generally not consider other information in addition to [the claimant's] earnings" unless "there is evidence indicating that [the claimant] may be engaging in substantial gainful activity or that [the claimant] [is] in a position to control when earnings are paid . . . or the amount of wages paid . . . ."  20 C.F.R. § 404.1574(b)(3)(i)–(ii).  The ALJ did not indicate that he was considering information beyond Tepper's earnings, or that he was

doing so because there was evidence Tepper controlled her earnings or was otherwise engaged in substantial gainful activity. *See* **AR 17.**

Therefore, the Commissioner's argument is a *post hoc* rationalization that must be rejected. *See Bray*, 554 F.3d at 1225. It is clear from Tepper's earnings that her laboratory-assistant and butterfly-curator jobs were not substantial gainful activity. It was error for the ALJ to conclude otherwise.

## II. Evaluation of Medical-Opinion Evidence

### A. Legal Principles

The deference afforded to a physician's medical opinion depends on the physician's relationship with the claimant and whether the physician's opinion is contradicted by another physician's medical opinion. *See Garrison*, 759 F.3d at 1012. There are three categories of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527).

If a treating physician's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence," it is given "controlling weight." 20 C.F.R. § 404.1527(c)(2). If a treating physician's medical opinion is uncontradicted by another physician, the opinion may be rejected "only for 'clear and convincing' reasons supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). An ALJ can satisfy the

standard of "substantial evidence" by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Reddick*, 157 F.3d at 725). The standard is not met, however, when the ALJ "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13.

Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to some deference. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). The amount of deference afforded to a noncontrolling opinion depends on several factors, including the length, nature, and extent of the treatment relationship, the amount of objective medical evidence (e.g., laboratory findings) supporting the opinion, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)–(6).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted). As such, if a non-examining physician relies on the same clinical findings as a treating or examining physician but merely reaches a different conclusion, the differing conclusion is not substantial evidence. *See Orn*, 495 F.3d at 632; *Martinez v. Colvin*, 585 F. App'x 612, 612 (9th Cir. 2014). However, if supported by other evidence, such as "independent clinical findings," the opinion of a non-examining physician may constitute substantial evidence for rejecting a treating or examining physician's opinion. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

## B. Dr. Sukerji

The parties agree that Dr. Sukerji is Tepper's treating physician. Because Dr. Sukerji's opinions regarding Tepper's limitations and ability to work are contradicted by the opinions of Dr. Woodcock and Dr. Fahlberg, **AR 96–97, 115–17, 1603–04,** Dr.

Sukerji's opinions may be rejected only for specific and legitimate reasons supported by substantial evidence, *Garrison*, 759 F.3d at 1012. Tepper raises three distinct challenges to the ALJ's treatment of Dr. Sukerji's opinions, each of which are addressed in turn. The Court finds that the ALJ committed reversible error.

### 1. Status as Treating Physician

Tepper argues that the ALJ's analysis is fundamentally flawed because the ALJ failed to recognize that Dr. Sukerji is a treating physician. This error, she says, made it "impossible" for the ALJ to properly evaluate Dr. Sukerji's opinions. The Court disagrees.

Although the ALJ's decision does not expressly refer to Dr. Sukerji as a treating physician, it can reasonably be inferred that the ALJ recognized Dr. Sukerji's status as such. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating that, in reviewing the ALJ's decision, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion"). At the hearing, Tepper expressly told the ALJ that Dr. Sukerji is her primary care physician and that she had seen him two to three times per year for approximately three years. **AR 43.** Additionally, the ALJ cited to progress notes in which Dr. Sukerji described Tepper's medical history and noted that he "ha[d] been following with patient since Nov 2014"—approximately one-and-a-half years. **AR 15, 1774.** The ALJ's consideration of this evidence reasonably allows the inference that he recognized Dr. Sukerji's status as a treating physician.

### 2. Tepper's Exertional Limitations

In the decision denying benefits, the ALJ addressed Dr. Sukerji's opinion that Tepper is precluded from work due to her fatigue. **AR 15.** The ALJ did not, however, address the exertional limitations endorsed by Dr. Sukerji. *See* **AR 15.** Tepper contends this omission was error. The Commissioner responds that the ALJ properly rejected Dr. Sukerji's opinions as inconsistent with the record as a whole. The Court finds that the ALJ erred.

As stated in the background section, Dr. Sukerji's opinion has two parts. **AR 1603–04, 1774–75.** First, Tepper has specific exertional limitations, including standing, walking,

and manipulative limitations, which "in principal" do not prevent her from working. **AR 1603–04, 1774–75.** Second, apart from her exertional limitations, she cannot work because her excessive and unpredictable fatigue would cause her to miss several workdays per month. **AR 1603, 1774–75.** The ALJ discussed and rejected only the second part of Dr. Sukerji's opinion, based on a finding that Tepper can "perform a whole host of activity." **AR 15.**

Rejecting the fatigue opinion (which, as described below, was error) did not also require rejecting the exertional-limitations opinion. Therefore, the ALJ had a duty to examine Dr. Sukerji's opinion regarding Tepper's exertional limitations and could have rejected that opinion only for specific and legitimate reasons. *See Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580, 580 (9th Cir. 2012) (holding the ALJ erred in determining RFC "because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it"). By ignoring the opinion, the ALJ failed to provide specific and legitimate reasons. *Garrison*, 759 F.3d at 1012–13. This error was harmful because if the ALJ accepted the exertional limitations and incorporated them into the RFC, then the ALJ could have found that Tepper was incapable of her past relevant work. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (holding ALJ erred in not including in RFC an exertional limitation recommended by treating physician).

### 3. Tepper's Fatigue

The ALJ rejected Dr. Sukerji's opinion that Tepper's CFS precludes work based on Tepper's reports that she took a solo bird-watching trip to Canada, dragged a piece of heavy furniture, tried to walk 30 to 40 minutes "every day," and pulled weeds. **AR 15.** The ALJ also relied on a survey completed by Tepper in November 2016, in which she indicated that she was not limited in activities such as moving furniture, vacuuming, bowling, and climbing flights of stairs. **AR 15–16, 1911–12.** Tepper disputes that her activities and self-reports are inconsistent with Dr. Sukerji's opinion that she is incapable of working even part-time. The Court finds that substantial evidence does not support the ALJ's

reasoning.

The activities relied upon by the ALJ for discounting Dr. Sukerji's opinions are not inconsistent with the sporadic nature of CFS. *See Blau v. Astrue*, 263 F. App'x 635, 637 (9th Cir. 2008) (holding that household chores, grocery shopping, and an isolated recreational rowboat outing "are generally considered consistent with the sporadic nature of CFS"); SSR 14-1p, 2014 WL 1371245, at *5 (Apr. 3, 2014) (providing guidance on evaluating claims based on CFS and recognizing that "medical signs, symptoms, and laboratory findings of CFS fluctuate in frequency and severity and often continue over a period of many months or years"). First, the record does not indicate how often Tepper pulls weeds or for how long each time. *See* **AR 1719.** Second, her walking activity can be described as limited, at most. The ALJ incorrectly stated that Tepper tried to walk 30 to 40 minutes "every day," **AR 15,** when, in October 2016, she actually reported trying to walk "every other day," **AR 1746,** and by the time of her hearing before the ALJ, in July 2017, she was walking "about 20 minutes at a time . . . maybe one or twice or three times a week," **AR 44.** Third, Tepper did report injuring herself "dragging something heavy," **AR 1761,** and that she was not limited in "[m]oderate activities, such as moving a table," **AR 1911,** but, again, there is no indication how often she moves furniture or how long that activity takes. Fourth, although Tepper took a 12-day birdwatching trip to Canada in 2016, she testified that she "had no schedule" and was able to "sleep in late" in her rented room and "sleep in the [rented] car" or "go home early" if her fatigue required her to sleep. **AR 46.**

Because none of the relied-upon activities are inconsistent with CFS, they do not undermine Dr. Sukerji's opinion that Tepper's fatigue renders her incapable of work. *See Reddick*, 157 F.3d at 722 (rejecting ALJ's rationale that claimant's daily activities were inconsistent with CFS and stating that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Thus, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Sukerji's opinion regarding the effects of Tepper's CFS.

### C.    Dr. Krasner

Dr. Scott Krasner evaluated Tepper once, on September 2, 2015, and opined that Tepper should not stand or walk for more than 30 minutes at a time or for more than four hours in an eight-hour period. **AR 1429–34.** The ALJ purported to give "[p]artial weight" to Dr. Krasner's opinion, but effectively rejected it by not incorporating this walking and standing limitation into Tepper's RFC. **AR 17.** The ALJ's reason for doing so is that Dr. Krasner "examined the claimant on a one-time basis and had no treating relationship with the claimant, which renders his opinion less persuasive." **AR 17.**

Tepper argues that this reason is both legally erroneous and pretextual. She asserts that it is legally erroneous because something beyond an examining physician's status is required to reject that physician's opinion. She asserts that it is pretextual considering the ALJ gave "substantial weight" to the opinions of state-agency physicians who did not examine her. The Commissioner offers three reasons of its own why the ALJ did not err: first, Dr. Krasner's opinions are mere recommendations, not imperatives that the ALJ was required to incorporate or expressly reject; second, the findings in Dr. Krasner's "Medical Source Statement" are inconsistent with the findings in his evaluation report; and third, the ALJ adopted an RFC that was "generally consistent" with Dr. Krasner's Medical Source Statement, including lifting and carrying restrictions greater than those proposed by Dr. Krasner. The Court finds that the ALJ erred.

The rules for analyzing an examining physician's opinions are identical to those for analyzing a treating physician's opinions. *Garrison*, 759 F.3d at 1012. Logically, then, an examining physician's opinion cannot be rejected merely because he or she is not a treating physician. This error was harmful, since the ALJ determined that Tepper is capable of "light work," which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Dr. Krasner opined that Tepper cannot stand or walk for more than four hours in an eight-hour period, so if the proposed limitation is incorporated into the RFC, Tepper would be incapable of performing the standing and walking requirements of light work. **AR 1431.**

The Commissioner's arguments to the contrary are *post hoc* rationalizations, as the ALJ relied entirely on Dr. Krasner's status and said nothing about the substance of his opinions. Furthermore, the Commissioner's arguments are without merit. Dr. Krasner offered the four-hour walking and standing restriction in a dictated evaluation report. **AR 1431.** Attached to the evaluation report is a "Medical Source Statement," which consists of questions that prompt for answers in a check-the-box format. **AR 1432–34.** In the Medical Source Statement, Dr. Krasner checked the box indicating that Tepper can stand and/or walk "[a]t least 2 hours but less than 6 hours in an 8 hour day (specify # of hours)." **AR 1432.** The Commissioner argues that by checking this box, Dr. Krasner "opined" that Tepper can stand and/or walk up to 6 hours per day. The Court disagrees with this interpretation of the Medical Source Statement. The question prompted Dr. Krasner to specify the number of hours in the range of two to six hours that Tepper can walk and/or stand. **AR 1432.** Dr. Krasner did not do so in the Medical Source Statement, *because* he specified the number of hours in the evaluation report. **AR 1431.**

Instead of adopting this reasonable interpretation and reading the two documents together, the Commissioner argues that the evaluation report and Medical Source Statement should be analyzed separately. That is, according to the Commissioner, the checked-box answer is an "opinion" that Tepper can stand and/or walk for up to six hours, and the four-hour restriction set forth in the evaluation report is a mere "recommendation" on how to make work easier for Tepper. This argument rings hollow, as it relies entirely on a skewed reading of the Medical Source Statement. The evaluation report and Medical Source Statement should be read together. When they are, it is clear that Dr. Krasner opined that Tepper has a four-hour walking and standing limitation.

The Commissioner's reliance on the prefatory "I would recommend" language is not persuasive. *See* **AR 1431.** Dr. Krasner was retained by the agency for the very purpose of opining on Tepper's capabilities; it makes little sense that he would offer non-imperative recommendations that the ALJ need not consider. This renders Tepper's case distinguishable from the line of cases relied upon by the Commissioner, which involve the

rejection of work restrictions that would merely make work easier for the claimant—not restrictions that were required for the claimant to work. *See Carmickle*, 533 F.3d at 1165 (affirming ALJ's rejection of recommendation that claimant use a reclining chair at work, where treating physician opined that claimant needed only the ability to alternate between sitting and standing); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009) (affirming ALJ's rejection of recommendation that claimant be limited to "highly routinized" tasks, where recommendation appeared in section titled "Recommendations" and physician noted that the claimant would merely have "less . . . difficulty" with such tasks); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015) (affirming ALJ's rejection of recommendations set forth in section titled "Treatment Recommendations," where physician's formal conclusions were clearly set forth in separate section).

Finally, the Commissioner argues that the RFC adopted by the ALJ is "generally consistent" with Dr. Krasner's Medical Source Statement. Given the conflict between the RFC and Dr. Krasner's proposed walking and standing limitation, this argument is without merit.

### D.     Dr. Woodcock and Dr. Fahlberg

Tepper argues that the ALJ erred in evaluating the opinions of non-examining physicians Dr. Woodcock and Dr. Fahlberg. She complains that although the ALJ gave "substantial weight" to Dr. Woodcock's opinion that she can stand and/or walk for four hours in an eight-hour workday, the ALJ inexplicably found that she has the RFC to perform light work, which requires standing and/or walking for six hours in an eight-hour workday.[3] The Commissioner argues there was no error because the RFC is consistent with both physicians' opinions. The Court finds that substantial evidence does not support the ALJ's decision.

This issue is tied to the ALJ's analyses of Dr. Sukerji's and Dr. Krasner's opinions: The ALJ could accept the conflicting opinions of non-examining physicians over the

---

[3]     She offers no specific reason why the ALJ erred as to Dr. Fahlberg's opinion that she can stand and/or walk for six hours in an eight-hour workday.

opinions of Dr. Sukerji and Dr. Krasner only by providing specific and legitimate reasons supported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (finding ALJ gave specific and legitimate reasons for adopting opinions of non-examining physician over examining physician). As explained in the preceding sections, the ALJ did not do so.

Furthermore, the ALJ's analysis of the agency physicians' opinions is itself flawed. The ALJ provided two boilerplate reasons for accepting their opinions. First, the ALJ found that the physicians "are highly qualified physicians who are also experts in Social Security disability evaluation . . . ." **AR 15.** This reasoning makes little sense on the facts of this case. Dr. Woodcock and Dr. Fahlberg may be experts in evaluating disability claims, but they never examined Tepper. On the other hand, Dr. Krasner is a board-certified specialist in occupational medicine who was retained by the agency in connection with Tepper's application for disability benefits, and he *did* examine Tepper. **AR 1429–34.** Yet, Dr. Krasner's opinions were cursorily dismissed, and the agency physicians' opinions were not. This contravenes the law that generally requires giving greater deference to examining physicians. *See Holohan*, 246 F.3d at 1202 (stating that the opinions of treating and examining physicians are generally afforded more weight than the opinions of non-examining physicians).

The second reason—i.e., that the non-examining physicians' opinions are "consistent with the medical evidence of record as described herein"—is provided in almost every ALJ denial. **AR 15.** This statement means nothing by itself; it incorporates the remainder of the ALJ's analysis. For the reasons given in this Order, many of the ALJ's conclusions are flawed. As a result, the ALJ's second reason is flawed as well.

### III. Definition of Disability

Tepper asserts that the ALJ applied a stricter, legally incorrect definition of "disability" by stating that her limitations "do not prevent [her] from performing any work," and that a decline in her physical abilities "does not necessar[ily] preclude her from performing all work activity." **AR 15, 17.** She argues that a finding of disability does not

require total preclusion from "all work activity." She also argues that the ALJ improperly rejected her family members' statements based on this incorrect definition. This claim of error is without merit.

Although Tepper is correct that she need not show complete preclusion from all work, the ALJ's decision reflects application of the correct legal definition. *See* **AR 11–12** (setting forth the five-step process), **12–17** (proceeding sequentially to step four). The ALJ determined that Tepper is not disabled only after finding at step four that she can perform past relevant work. **AR 17.** Although the ALJ erred along the way in other respects, two innocuous comments are not a persuasive reason to find that the ALJ applied an incorrect disability definition.

## IV. Remedy

Tepper requests that this case be remanded for an immediate award of benefits, or, in the alternative, be remanded for further proceedings. This case will be remanded with instructions for the ALJ to reevaluate Tepper's claim.

### A. Legal Principles

When the ALJ commits reversible error, the court may either remand for reevaluation of the claimant's application or, in some cases, for an immediate award of benefits. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under the "credit-as-true" rule, federal courts may remand for an award of benefits if three conditions are met. *Leon*, 880 F.3d at 1045 (citing *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1400–01 (9th Cir. 1988)). First, courts determine "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, courts "determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps." *Id.* at 1046–47 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). "When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary." *Id.* at 1047. Third, courts determine whether, if the improperly

rejected evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1101). If yes, then a direct award of benefits may be appropriate. *Id.*

## B. Analysis

The first part of the credit-as-true rule is satisfied. As explained in this Order, the ALJ made multiple legal errors, including a failure to properly evaluate and weigh the opinions of Dr. Sukerji, Dr. Krasner, Dr. Woodcock, and Dr. Fahlberg, and a failure to properly analyze Tepper's laboratory-assistant and butterfly-curator jobs. However, the second part of the test is not satisfied. Further proceedings would be useful so that the ALJ can properly resolve the conflicting medical opinions and assess Tepper's symptom testimony and other evidence. *See Treichler*, 775 F.3d at 1098, 1101 (stating that it is for the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record," and that it is inappropriate to remand for benefits "[w]here there is conflicting evidence, and not all essential factual issues have been resolved"). Tepper does not seriously argue that an award of benefits is appropriate, so this matter will be remanded for further proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that this case is **remanded** to the ALJ for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 16th day of September, 2019.

_____
Maria Davila
United States Magistrate Judge

- 20 -